466 A.2d 421 (1983)
In the Matter of C.Y., Appellee.
No. 82-250.
District of Columbia Court of Appeals.
Argued March 22, 1983.
Decided August 31, 1983.
*422 Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on briefs, for appellant.
James Klein, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., was on brief, for appellee.
Before MACK and TERRY, Associate Judges, and KELLY, Associate Judge, Retired.[1]
KELLY, Associate Judge, Retired:
C.Y. was petitioned in the Family Division of Superior Court as a juvenile in need of care and rehabilitation, having allegedly violated the provisions of D.C.Code §§ 22-1801(b) (burglary II) and -2202 (1981) (petitlarceny). On the day of trial, pursuant to a consent decree, the court ordered that C.Y. be released, to remain under its supervision for a period of six months.[2] The proceedings against C.Y. were thus suspended with the promise that if C.Y. complied with all the provisions of the consent decree, the petition would ultimately be dismissed. One such provision was:
If a new petition is filed against . . . [him], this Decree may be deemed void *423 and the original charge(s) reinstated. If this happens, he may be held accountable on the original charge(s) as well as the new petition.
Three months later C.Y. was again petitioned for an alleged violation of D.C.Code § 22-2202 (1981). The Corporation Counsel's Office, after consultation with the Director of Social Services, reinstated the original petition and asked for a trial date. On objection by C.Y., the court held that before the consent decree could be revoked and the original petition reinstated, due process required that the government move to reinstate within the consent decree time period and a probable cause hearing be held on the new charge. We reverse.

I
D.C.Code § 16-2314(c) (1981) provides:
If prior to the expiration of the decree or discharge by the Director of Social Services, the child fails to fulfill the express conditions of the decree or a new delinquency or need of supervision petition is filed concerning the child, the original petition under which the decree was filed may, in the discretion of the Corporation Counsel following consultation with the Director of Social Services, be reinstated. The child shall thereafter be held accountable on the original petition as if the consent decree had never been entered.
Thus, by statute, the decision to rescind a consent decree and reinstate an original petition is discretionary with the Corporation Counsel. The trial court felt, however, that the decision to rescind is similar to the revocation of probation, a prerequisite being a hearing on the new charge, including cross-examination of witnesses. C.Y. agrees, and, through the Public Defender, argues also that aside from constitutional due process, there must be a hearing to ascertain whether C.Y. has in fact violated the specific terms of the consent decree before the original petition may be reinstated.
The statute is clear enough. It was enacted as part of the District of Columbia Court Reform and Criminal Procedure Act of 1970,[3] to provide another way to dispose of juvenile charges. It says nothing about a probable cause hearing before reinstatement; indeed, it does not contemplate that the court participate at all in the decision to reinstate. In reading such a requirement into the statute, however, the trial court said that because of the reinstatement C.Y. would, if convicted, be subject to a greater risk of commitment, or he would be placed in a less favorable plea bargaining position. Thus, at the least, a hearing to establish probable cause on the new charge was necessary.[4]
In urging reversal, the government relies upon the clear words of the statute. It takes the alternative position that if a hearing is required, it need only encompass the procedure of Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); namely, the presentation of an affidavit and no adversary cross-examination.
The Public Defender argues that a consent decree cannot be revoked unless the court finds an intentional violation of one of its terms, a finding which must be made by looking to the terms of the decree itself without reference to the provisions of the statute. Alternatively, he would agree with the trial court that due process requires an adversary hearing to determine if C.Y. committed a new offense before revocation of the decree and reinstatement of the old charge. He urges, however, that probable cause is not the test; rather, the government must prove the new charge by clear and convincing evidence. Much is therefore made of the literal terms of the consent decree; i.e., that C.Y. was released under supervision with a number of conditions imposed, some applicable to all decrees *424 (i.e., to obey all laws) and some only to him (i.e., a curfew).
As we said, the decree states that a failure to abide by its conditions may result in rescission and, paraphrasing the statute:
If a new petition is filed against . . . [him], this Decree may be deemed void and the original charge(s) reinstated. If this happens, he may be held accountable on the original charge(s) as well as the new petition.
Thus, the argument is that because C.Y. was not advised in specific terms that if a new petition is filed the prosecutor has an absolute right to revoke the consent decree and reinstate the original charge, he has violated no condition of the decree. An arrest is accusatory; it is not a volitional act which warrants revocation. Parker v. United States, 373 A.2d 906, 907 (D.C.1977) (per curiam). Accordingly, analogizing the process to a probation revocation (the decree being a form of pretrial probation), the court must necessarily find a violation of some condition of the consent decree sufficient to warrant revocation, after which the ultimate decision to revoke remains in the Corporation Counsel's discretion. That is to say, the court-ordered consent decree determines C.Y.'s rights, not the statute.
We are not persuaded, however, that the decree itself, without reference to the statute, is dispositive. The trial court was not of this view; rather it found a liberty interest flowing from the decree which is protected by the fifth amendment guarantee of due process, a holding which we must meet in this appeal.[5]

II
C.Y. argues that the finding that the decree bestowed upon him a liberty interest which cannot thereafter be compromised absent procedural due process is unassailable. He adds, however, that the court mistakenly required only a probable cause standard of proof as to the new charge, a standard which falls short of due process requirements.
In finding a liberty interest created by the decree, the trial court made the comparison to the revocation of probation. Appellee would go further, to urge that the decree created a conditional right thereafter to be free from prosecution with its considerable attendant fears and risks. Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (claim of immunity on double jeopardy grounds). This right, it is argued, stems from legislative and judicial action, i.e., the decree, and not from constitutional concerns; consequently, the government's claim that no loss of liberty flows from reinstatement of the original petition is baseless. Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). This right, moreover, cannot be held "de minimis."
Nevertheless, it is appellee's position that the court's analogy to revocation of probation, Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), or of parole, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), supports the finding that a due process hearing is implicitly required by the statute before the revocation of a pretrial consent decree. Although the finding of a liberty interest may be more elusive, the court imagined that with revocation, plea bargaining power is reduced and the juvenile faces a higher risk of pretrial detention. Moreover, the possibility of dismissal for social reasons is forever lost. Super.Ct.Juv.R. 48(b).
The government relies upon Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), to support its claim that by statute the filing of a new petition gives it absolute discretion to reinstate the old one. Appellee counters that Vitek v. Jones, supra, and Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), effectively dispose of this contention; *425 consequently, an appropriate procedure must be fashioned to decide whether C.Y. has violated any condition of the consent decree. This procedure, it is argued, requires not only a hearing, with right to cross-examination, but also proof that the juvenile has committed a new offense by clear and convincing evidence. Only after such a determination can the prosecutor exercise his statutory discretion in deciding to revoke a consent decree.

III
As noted above, three solutions are offered to resolve the issue on appeal: (1) the statutory argument suggesting the government's complete discretion to revoke a consent decree and to reinstate the original petition when new charges are filed, or, in the alternative, a Gerstein hearing is the most that can be required; (2) affirmance of the trial court's order which reads into the statute a need for a probable cause hearing, with the right of adversary cross-examination; and (3) appellee's proposal that an adversary hearing is essential to determine whether the terms of the consent decree have in fact been violated, with any such violation to be established by clear and convincing evidence.
We conclude that C.Y. does enjoy a liberty interest arising from the consent decree, and applying the three-tiered balancing test of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), hold that within the meaning of the fifth amendment's guarantee of due process, appellee's interest is adequately protected by the statutorily enunciated procedures for filing a petition. See D.C.Code § 16-2305 (1981).
"Procedural due process imposes constraints on governmental decisions which deprive individuals of `liberty' or `property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, supra, 424 U.S. at 332.[6] Application of these constraints to a particular case involves a "two-stage analysis." Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977).
We must first ask whether the asserted individual interests are encompassed within the [Fifth Amendment's] protection of "life, liberty or property"; if protected interests are implicated, we then must decide what procedures constitute "due process of law."
Id. (citing Morrissey v. Brewer, supra, 408 U.S. at 481, 92 S.Ct. at 2600; Board of Regents v. Roth, 408 U.S. 564, 569-72, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972)).

A.
Protected "liberty" or "property" interests may arise from two sources  the due process clause itself and, pertinent to the instant case, federal, state or regulatory measures. Hewitt v. Helms, ___ U.S. ___, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). See, e.g., Vitek v. Jones, supra (transfer from prison to mental institution pursuant to statute); Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (statutorily authorized parole); Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (no right to prison good time credits inheres in the Constitution although state may create such an interest by statute). Although it is the "nature of the interest at stake," and not the weight, which governs whether due process protections apply, Ingraham v. Wright, supra, 430 U.S. at 672, 97 S.Ct. at 1413 (quoting Board of Regents v. Roth, supra, 408 U.S. at 570-71, 92 S.Ct. at 2705) (emphasis omitted), "[w]hether any procedural protections are due depends on the extent to which an individual will be `condemned to suffer grievous loss.'" Morrissey *426 v. Brewer, supra, 408 U.S. at 481, 92 S.Ct. at 2600 (citing Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). The Court repeatedly has warned that "`the range of interests protected by procedural due process is not infinite.'" Ingraham v. Wright, supra, 430 U.S. at 672, 97 S.Ct. at 1413 (quoting Board of Regents v. Roth, supra, 408 U.S. at 570, 92 S.Ct. at 2705).
In this case, pursuant to the applicable statutory authority,[7] C.Y. and the Corporation Counsel entered into a consent decree. Under that decree, which reflected the statutory directive, the charges filed against C.Y. were to be dismissed if its terms were fulfilled. These terms had two components: first, that C.Y. comply with the general and specific conditions of the decree and, second, that no new petition be filed against C.Y. during its six-month duration.
The trial court found that C.Y. had a real interest in the performance of the terms of the decree. Upon its rescission and the reinstatement of the underlying petition, C.Y. would run a greater risk of confinement to a juvenile facility, would face two trials rather than one, and would be in a more unfavorable plea bargaining position. The court analogized the conditional liberty it found C.Y. to possess under the consent decree to the conditional liberty possessed by a parolee under a parole agreement. Before us, C.Y. further asserts that the decree granted him a conditional freedom from prosecution as well as from the pressures, fears and anxiety which accompany trial. Coupled to this conditional freedom, he argues, was an objective expectation that the decree would not be rescinded arbitrarily and the old petition against him reinstated.
We are not convinced so easily that appellee's liberty interest is of the magnitude found by the trial court. We recognize that the agreement between C.Y. and the Corporation Counsel is similar in form to the agreement of a parolee. Each establishes conditions with which the juvenile and the parolee must comply and provides rewards for such compliance. In many ways, these conditions are parallel. In each agreement there are sanctions to be imposed for noncompliance with the established conditions, e.g., reinstatement of the underlying petition or revocation of parole, respectively. Nevertheless, the potential effects on appellee upon reinstatement of the original petition cannot be equated with the immediate and severe effects of a revocation of probation.
The parolee whose parole is revoked faces an immediate loss of freedom  an arrest, and the subsequent strong probability of reconfinement to prison. See Morrissey v. Brewer, supra, 408 U.S. at 482, 92 S.Ct. at 2600. Appellee, to the contrary, is not faced with the potential of immediate confinement. He has been neither arrested nor detained. Cf. D.C.Code §§ 16-2309, -2310 (1981) (detention of a child prior to a fact-finding hearing). What has happened is, simply, the discretionary nullification by the Corporation Counsel, following consultation with the Director of Social Services, of a consent decree, pursuant to its express terms, which voluntarily was entered into by C.Y. and the Corporation Counsel. As the trial court noted, upon reinstatement of the old petition, the net effect on C.Y. is that he will have to face a trial on the original petition. At this trial, he will be able to assert all the defenses which he might have asserted had he not entered into the decree.[8]
Further, most of the adverse consequences which the trial court presumed would occur upon reinstatement of the original petition, i.e., a greater risk of confinement, *427 a more unfavorable plea bargaining position, etc., remain uncertain. Compared to the certain and complete loss of freedom by a parolee upon initial arrest, and the probable long-term reconfinement to prison, the adverse consequences to appellee are speculative at best. Cf. Wolff v. McDonnell, supra, 418 U.S. at 560-61, 94 S.Ct. at 2976-77 (distinguishing the uncertain liberty interest of a prisoner in good time credits from the immediate liberty interest of a parolee in parole).[9] Although similarities exist, the rescission of the consent decree and the reinstatement of the underlying petition are "qualitatively and quantitatively different from the revocation of parole or probation." Id. at 561, 94 S.Ct. at 2977.
With all this, we do not say that C.Y.'s interest in not having the consent decree arbitrarily rescinded is "de minimis" and not within the protections of the due process clause of the fifth amendment. C.Y. entered into the decree with the Corporation Counsel, pursuant to statutory authority applicable to the District of Columbia. Under its terms, the decree could be rescinded for only two reasons. By executing the decree, C.Y. conceived of a legitimate expectation that he would lose the benefits bestowed only if it were determined that a new petition was filed against him or that he breached the decree conditions. "[T]he determination of whether such behavior has occurred [, therefore,] becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed." Id. at 558, 94 S.Ct. at 2975.[10]
Accordingly, we hold that the rescission of the consent decree and reinstatement of the underlying petition, pursuant to D.C. Code § 16-2314(c) (1981), implicated a liberty interest protected by the due process clause of the fifth amendment. Once this liberty interest, properly conditioned on the fulfillment of the terms of the decree, was granted to C.Y., due process protections attached to any decision of the Corporation Counsel to revoke the decree under which the grant was made.

B.
Having determined that due process applies to the rescission of a consent decree, we proceed to evaluate what process is due. As so often said by the Court, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, supra 408 U.S. at 481, 92 S.Ct. at 2600. The trial court, drawing on its analogy to probation, held that, on a motion by the government to reinstate based upon the filing of a new petition,[11] due process requires a probable cause hearing with a right of cross-examination to the juvenile. In reviewing this ruling, we follow the analysis in Mathews v. Eldridge, supra, 424 U.S. at 335, 96 S.Ct. at *428 903; i.e., we consider "the private interests at stake in a governmental decision, the governmental interests involved, and the value of procedural requirements in determining what process is due [under the fifth amendment]." Hewitt v. Helms, supra, ___ U.S. at ___, 103 S.Ct. at 872.[12]
From our discussion of the interest which requires the application of due process, it is evident that appellee's interest is not one of great moment. He has received a temporary reprieve from trial on the charges in the original petition, with the potential that this reprieve will become permanent. By virtue of reinstatement, however, he merely will face trial on the original petition, receiving the same due process protections he would have received had he never entered into the decree. The lack of constraint imposed upon appellee's immediate freedom contrasts sharply with the drastic adverse effect of a revocation of parole, i.e., the immediate arrest and detention of the parolee. Moreover, the uncertainty of the long-term effects considered by the trial court, see discussion supra, differs greatly from the likely "lengthy incarceration" faced by many parolees upon reconfinement.
The District of Columbia has an interest in the fulfillment of the rehabilitative purposes of a consent decree. The decree was agreed upon with the belief that its entry "without adjudication would be in the best interest of the public and the child." Super.Ct.Juv.R. 104(a)(3).[13] Upon determining that the consent decree concept has failed relative to a particular child, i.e., that a breach of the decree conditions has occurred, the District has an additional interest in having the child answer to the charges of the original petition upon which the rehabilitative design of the consent decree was based.
In all of this, the government has an interest in being fair. Society will benefit nothing by reinstating the original petition based upon erroneous information of an alleged breach of the decree conditions or the erroneous filing of a new petition. Indeed, fair treatment of the juvenile "will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." Morrissey v. Brewer, supra, 408 U.S. at 484, 92 S.Ct. at 2601.
Reinstatement based upon the filing of a new petition against the juvenile presents negligible risk of error. A two-stage filing procedure exists in the statute to prevent groundless charges. The new petition first must be "verified" by "any person who has knowledge of the facts alleged or, being informed of them, believes they are true. . . ." D.C.Code § 16-2305(b) (1981). Then, before filing, the Corporation Counsel must make an independent inquiry into the facts and a determination of the legal basis for the petition. Id. at (c).
This court has reviewed this procedure for petitioning juveniles without detention and found it to comport with the due process standard of "fundamental fairness" applicable to juvenile proceedings. M.A.P. v. Ryan, 285 A.2d 310, 317 (D.C.1971); see McKeiver v. Pennsylvania, supra note 6. Hence, in M.A.P. v. Ryan, while holding, in part, that due process does not grant a juvenile charged by verified petition a right to a probable cause hearing, we termed this filing process "a fair procedure designed to prevent, by reasonable precautions, the filing *429 of an unfounded petition against the juvenile." Id.[14] The additional fact here, that C.Y. had the opportunity for rehabilitation under the guidance of a consent decree, does not undermine our previous determination of the due process propriety of this procedure. Moreover, the due process protections which this procedure affords to the juvenile would not be greatly enhanced by an adversary, probable cause hearing. Cf. Morrissey v. Brewer, supra, 408 U.S. at 485-86, 92 S.Ct. at 2602 (purpose of adversary hearing in parole revocation context is (1) to establish probable cause for the initial arrest, and (2) to gather information for use at a later final revocation proceeding).
Accordingly, we conclude that the trial court exceeded the demands of due process by holding that where the government bases reinstatement upon the filing of a new petition, it must move to reinstate the underlying petition and, at an adversary hearing on that motion, must demonstrate probable cause to believe that the juvenile committed the newly charged acts. The interest of the child in not having the underlying petition reinstated in an arbitrary manner is sufficiently protected, in this situation, by the petition filing procedure established by Congress in the D.C.Code. See D.C.Code § 16-2305 (1981); M.A.P. v. Ryan, supra.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Judge Kelly was an Associate Judge of the court at the time of oral argument. Her status changed to Associate Judge, Retired, on March 31, 1983.
[2] D.C. Code § 16-2314(a) (1981) states:

At any time after the filing of a delinquency or need of supervision petition and prior to adjudication at a factfinding hearing, the Division may, on motion of the Corporation Counsel or counsel for the child, suspend the proceedings and continue the child under supervision, without commitment, under terms and conditions established by rules of the Superior Court. Such a consent decree shall not be entered unless the child is represented by counsel and has been informed of the consequences of the decree; nor shall it be entered over the objection of the child or of the Corporation Counsel.
[3] Pub.L. No. 91-358, § 121, 84 Stat. 473, 522-45 (1970).
[4] The new charge against C.Y. has apparently been dismissed for want of prosecution.
[5] Certainly, appellant argues, and we agree, an analogy to the United States Attorney's First Offender Treatment Program is illogical.
[6] While the fourteenth amendment does not apply to the District of Columbia, see Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), similar protections are found in the due process clause of the fifth amendment, District of Columbia v. H.J.B., 359 A.2d 285, 290 (D.C. 1976) (citing Washington v. United States, 130 U.S.App.D.C. 374, 381, 401 F.2d 915, 922 (1968)), which applies to juvenile proceedings. In re A.S.W., 391 A.2d 1385, 1387-88 (D.C. 1978) (citing McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971)).
[7] D.C.Code § 16-2314(a) (1981).
[8] Ironically, in addition to being returned to the same position he occupied before the decree was executed, by virtue of the Corporation Counsel's action, appellee is relieved from the burden of complying with the conditions of the decree, the very compliance from which he asserts his liberty interest at stake here is partially derived.
[9] The Court distinguished these two liberty interests, stating:

For the prison inmate, the deprivation of good time is not the same immediate disaster that the revocation of parole is for the parolee. The deprivation, very likely, does not then and there work any change in the conditions of his liberty. It can postpone the date of eligibility for parole and extend the maximum term to be served, but it is not certain to do so, for good time may be restored. Even if not restored, it cannot be said with certainty that the actual date of parole will be affected; and if parole occurs, the extension of the maximum term resulting from loss of good time may affect only the termination of parole, and it may not even do that. . . .
Id.
[10] With regard to the liberty interest of a prisoner in the good time credits afforded by the State, the Court in Wolff stated:

But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.
Id. at 557, 94 S.Ct. at 2975.
[11] The government actually filed a motion to set a trial date which the court treated under the circumstances as a motion to reinstate.
[12] The Court in Mathews v. Eldridge, supra, 424 U.S. at 335, 96 S.Ct. at 903, stated:

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
[13] Rehabilitation being the aim, society at large, as well as the Corporation Counsel, "has a stake in whatever may be the chance of restoring [a juvenile] to [a] normal and useful life within the law." Morrissey v. Brewer, supra, 408 U.S. at 484, 92 S.Ct. at 2601.
[14] Implicit in this procedure and, more specifically, the independent inquiry of the Corporation Counsel is the additional protection against the filing of unfounded petitions arising from a prosecutor's "professional duty not to charge a suspect with [a] crime unless he is satisfied of probable cause." Gerstein v. Pugh, supra, 420 U.S. at 121-22 n. 22, 95 S.Ct. at 867 n. 22 (citing ABA Code of Professional Responsibility DR 7-103(A) (Final Draft 1969) (a prosecutor "shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause"); American Bar Association Project on Standards for Criminal Justice, The Prosecution Function §§ 1.1, 3.4, 3.9 (1974); American College of Trial Lawyers, Code of Trial Conduct, Rule 4(c) (1963)).