Raymond D. COATES, Appellant,

v.

UNITED STATES, Appellee.

No. 83–385.

District of Columbia Court of Appeals.

Argued Dec. 7, 1983.

Decided Oct. 22, 1984.

Francis D. Carter, Public Defender Service, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., at the time the pleadings were filed, was on the pleadings, for appellant.

Mary Incontro, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the pleadings were filed, Michael W. Farrell, and Mary Ellen Abrecht, Asst. U.S. Attys., Washington, D.C., were on the pleadings, for appellee.

Before NEBEKER, MACK and ROGERS, Associate Judges.

MACK, Associate Judge:

This appeal raises issues not before addressed by this court. Specifically, we are asked to decide (1) whether the sentencing judge who imposed a term of treatment under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026 (1976) (hereinafter YCA) may subsequently enter a finding of no benefit from further YCA treatment,

thereby withdrawing the directive to the Bureau of Prisons to provide such treatment, and (2) assuming such a finding is proper, what procedural due process requirements attach to that determination. We find that a sentencing judge may modify his previously imposed term of treatment under the Act but that a finding of no benefit from further treatment thereunder may be made only after a hearing affording procedural due process. Because the trial court acted to modify the treatment in this case without such a hearing, we reverse and remand for the court, in its discretion, to fashion and grant such procedural relief, concomitant to a hearing, as may be required prior to reentry of any order.

On August 15, 1977, appellant pled guilty to assault with intent to commit robbery while armed, D.C.Code §§ 22–501, –3202 (1973), in satisfaction of a pending six-count indictment. Pursuant to this plea, on December 1, 1977, now Chief Judge Moultrie sentenced appellant under § 5010(c) of the YCA to a period of confinement of fifteen years. Appellant was sent to the Lorton Youth Center to serve his sentence.

According to the Bureau of Prisons, appellant was transferred in 1979 to federal custody from the District of Columbia Department of Corrections, Lorton Youth Center.[1] Thereafter, he was transferred to seven different institutions[2] for disciplinary reasons. During that time, appellant had been the subject of forty-seven disciplinary reports. Moreover, on December 18, 1980, he received a three month consecutive adult term in the Western District of Oklahoma for assaulting a staff member at the federal institution in El Reno, Oklahoma.

On August 3, 1982, the Bureau of Prisons contacted Chief Judge Moultrie to advise him of appellant's poor institutional adjustment, as evidenced by the above incidents, and to request a statement from him that appellant would not benefit from further YCA treatment—a statement which, purportedly, would allow the Bureau to remove him from such treatment. A second letter reiterating this request was sent to Chief Judge Moultrie on August 30, 1982. On September 10, 1982, the Chief Judge notified the Bureau and appellant's attorney of record, the Public Defender Service (PDS), that he was prepared to make the requested finding, adding that if appellant's attorney objected, a hearing would be scheduled immediately.

On September 14, 1982, PDS wrote to Chief Judge Moultrie to acknowledge receipt of his September 10th letter and to request a delay in any final decision. PDS also requested a copy of the Bureau's two letters (dated August 3rd and 30th) and indicates its uncertainty as to whether a hearing would be necessary. On September 15, 1982, the Chief Judge sent PDS copies of the Bureau's letters, as requested.

On February 1, 1983, a letter and packet of materials was sent to Chief Judge Moultrie from the United States Department of Justice, to supplement the Bureau's earlier letters. The cover letter indicated that the packet included records of appellant's disciplinary transfers and reports, which reflected his "extremely poor institutional adjustment." We have not found this packet of material to be included as part of the record on appeal. In addition, we note that, while the Justice Department's letter stated that pursuant to policy provisions, appellant either received or would receive, upon request, access to all materials submitted therein, the record before us does not reflect that appellant received those materials or that PDS had any knowledge they were submitted to the Chief Judge.

---

1. Appellant maintains that he was transferred into the federal prison system shortly after he was assaulted by another prisoner with hot grease.

2. Subsequent information from the Bureau of Prisons reflected that appellant had been transferred through *six* institutions.

On February 8, 1983, PDS, on behalf of appellant, filed an opposition to the Bureau's request for a finding of no benefit from further YCA treatment. Appellant argued that the trial court was without jurisdiction to rule on the Bureau of Prisons' request, and maintained that the Bureau had never complied with the sentence he received on December 1, 1977, to place him in an institution "that has housing and treatment only for YCA inmates." Appellant, furthermore, requested a hearing in this matter and requested that he be present at it.

No hearing, however, was held, and on March 22, 1983, Chief Judge Moultrie entered an order finding that appellant would not benefit from further YCA treatment. Upon appeal from that order, appellant and the government have filed motions respectively, in lieu of briefing, opposing, and supporting that finding. On September 6, 1983, this court entered an order denying the above motions. As a result, the case was calendared for argument and the motions were treated as briefs for the parties. Such is the posture of the matter before us.

Appellant contends that the YCA does not permit the original sentencing judge to determine at a later time whether the offender would continue to benefit from further YCA treatment. We disagree. In our view, this conclusion is dictated by the Supreme Court's opinion in *Ralston v. Robinson*, 454 U.S. 201, 102 S.Ct. 233, 70 L.Ed.2d 345 (1981). In *Ralston*, the Court addressed whether a youth offender who is sentenced to a consecutive adult term of imprisonment while serving a YCA sentence must continue to receive YCA treatment for the remainder of his youth sentence. It held that the judge imposing the subsequent adult sentence "may modify the essential terms of treatment of a continuing YCA sentence if he finds that such treatment would not benefit the offender further." *Id.* 454 U.S. at 217, 102 S.Ct. at 243 (footnote omitted). Recognizing that no statutory provisions governed the precise issue, the Court reasoned from the

legislative history that Congress reposed authority in the Court to adjust, over time, the basic terms of confinement. *Id.* at 213–15, 102 S.Ct. at 241–42. Thus, the determination of the original sentencing court was not *"irrevocable,"* *id.* at 211, 102 S.Ct. at 240, but rather had to be subject to modification so as to avoid "the continuation of futile YCA treatment." *Id.* at 215, 102 S.Ct. at 242. The Court further supported its conclusion noting that under the statute, a second sentencing judge may impose a *concurrent* adult sentence thereby modifying the original sentencing judge's YCA term. *Id.* at 216 & n. 9, 102 S.Ct. at 243 & n. 9.

Despite the different factual circumstances of the instant case, the rationale and holding of *Ralston* necessarily resolve the issue at bar. If a subsequent sentencing judge may make a finding of no benefit from further YCA treatment, it logically follows that the original sentencing judge may make that same determination. To disallow that result would plainly be in disharmony with *Ralston* and would only serve to continue futile YCA treatment. Moreover we find further support for this position in that courts which have addressed the issue have reached identical conclusions. *In re (Allen D.) Coates*, 229, U.S.App.D.C. 67, 69, 711 F.2d 345, 347 (1983) (per curiam); *King v. Kenney*, 671 F.2d 1053, 1055 (7th Cir.1982); *Walls v. Kerr*, 568 F.Supp. 684, 686–87 (W.D.Wis. 1983). *But see United States v. Won Cho*, 730 F.2d 1260, 1269–71 & n. 14 (9th Cir. 1984).

Given our conclusion that the original sentencing judge may make a finding of no further benefit, we turn to the critical question of what procedural due process requirements attach to that determination.

We are in full agreement with the District of Columbia Circuit Court of Appeals' statement in *In re Coates, supra*, that "a youth offender's right to segregation and treatment under the YCA consti-

tutes a liberty interest protected by the due process clause of the Fifth Amendment." 229 U.S.App.D.C. at 69, 711 F.2d at 347 (citing *Micklus v. Carlson,* 632 F.2d 227, 238 (3d Cir.1980)). *Cf. Vitek v. Jones,* 445 U.S. 480, 488–91, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980) (liberty interest implicated by transfer of a state prisoner to a mental hospital); *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973) (revocation of probation results in a loss of liberty implicating due process protections); *Morrissey v. Brewer,* 408 U.S. 471, 481–82, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (termination of liberty of a parolee implicates due process protections). True, the determination of no benefit from further YCA treatment does not constitute a resentencing but rather marks a modification of the terms and conditions of confinement. *In re Coates, supra,* 229 U.S.App.D.C. at 69, 711 F.2d at 347; *see Ralston v. Robinson, supra,* 454 U.S. at 217, 102 S.Ct. at 243. Still, it is plain that such a determination will have a significant impact upon those terms and conditions. Appellant stands to lose the benefit of being segregated from older, more hardened criminals as well as access to particular programs for treatment of YCA offenders. *Cf. Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (no due process right to hearing prior to prison transfer).

■ After balancing appellant's interest in segregation and treatment under the YCA, the government's interest in the administration of its prison system, and the broad societal interest in accomplishing the rehabilitative goals of the YCA, *see Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1975); *In re C.Y.,* 466 A.2d 421, 427–28 (D.C.1983), we conclude that, at a minimum, a hearing is necessary prior to entry of a finding of no benefit from further YCA treatment. *See*

*Walls v. Kerr, supra,* 568 F.Supp. at 687 (holding that due process requires the original sentencing court to give an offender the opportunity to respond to allegations of prison officials, "if not hold a full-blown evidentiary hearing on the charges," before reaching its determination). *See also United States v. Won Cho, supra,* 730 F.2d at 1273–74.

Indeed, the need for a hearing is amply borne out by the record at bar. We note that the sentencing court in September 1982 told appellant's attorney that a hearing would be scheduled if requested, that a hearing was requested in February 1983, but that the trial court reached its determination in March 1983 without a hearing.

In addition, while it is clear that appellant had notice of the Bureau of Prisons' request for a no benefit determination and was afforded an opportunity to file a written response thereto, appellant, in his motion in opposition to the government's motion for summary affirmance of the court's March 22, 1983 order, indicates that he learned, for the *first time on appeal,* of the Justice Department's February 1, 1983 letter to Chief Judge Moultrie detailing appellant's disciplinary records and transfers. We have noted in our discussion, *supra,* the possibility that appellant never received or had knowledge of the information contained in this letter. And such an omission of obviously relevant material would have undermined the adequacy of the notice given appellant about the allegations supporting the Bureau's request and undoubtedly affected his ability to respond in writing. Because we do not have a copy of the information contained in the February 1, 1983 letter, beyond the short summary of it provided in the letter itself, we cannot effectively assess whether Chief Judge Moultrie relied upon it in his March 22, 1983 order. A hearing would most likely have remedied these ambiguities.[3]

**3.** *It is* also worth mentioning that the United States Attorneys' Office did not participate in

these proceedings until after Chief Judge Moultrie issued the order.

Additionally we note that the trial court in its March 22, 1983 order made no mention of appellant's allegations of non-compliance by the Bureau with the terms of his initial YCA sentence. In his opposition to the Bureau's requested finding of no benefit, appellant stated that the federal authorities improperly "changed the conditions of confinement to the point that since 1979 [he] has been deprived of a placement at a facility separate from non-YCA inmates." He further contended that the actions taken by prison officials in light of his purportedly " 'poor institutional adjustment' " took no account of relevant factors such as his age, height and build.

Obviously, it is not incumbent upon us to assess these allegations. For these purposes, it is sufficient to point out that they raise issues which required further exploration.[4]

As did the circuit court in *In re Coates, supra,* we choose to allow the original court broad discretion on remand to fashion any procedures, concomitant to a hearing, as may be required to comport with appellant's right to due process. 229 U.S.App. D.C. at 69, 711 F.2d at 347. Accordingly, this case is

*Remanded to the trial court for proceedings consistent with this decision.*

4. After oral argument, court papers containing the following information were submitted to this court. On December 20, 1982 appellant filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Illinois. Although the petition was filed prior to Chief Judge Moultrie's entry of a no benefit finding, the hearing before a magistrate was not held until April 18, 1983, subsequent to the March 22, 1983 no benefit determination. At the hearing on his petition, appellant, both on his own and through counsel, contested the legality of his placement in adult institutions by the Bureau of Prisons because he had not received YCA treatment in accordance with his original sentence. Appellant further argued that the order entered by Chief Judge Moultrie did not affect the illegality of his detention in adult institutions because the Superior Court was without authority to entertain a request for a no benefit determination and, moreover, made the finding without a hearing and thus in violation of his due process rights. The magistrate, though agreeing that appellant had not received YCA treatment, nonetheless denied the petition. The district court held that it was inappropriate for it to allow collateral attack on the sufficiency of the procedures resulting in the no benefit determination, and that relief should be sought by an appeal from the order. In short, the district court found that appellant was no longer entitled to YCA treatment in light of the no benefit determination. Appellant filed an appeal to the seventh circuit from the denial of his petition. That appeal [as of 10/2/84] is currently pending.

We make reference to these proceedings to illustrate that appellant was effectively denied an alternative forum to raise his allegations of noncompliance because his hearing occurred after entry of the no benefit determination. We believe these circumstances buttress our holding that a hearing was necessary to flush out these matters.