**Thomas D. VAUGHN, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 90–299, 90–513.**

District of Columbia Court of Appeals.

Submitted May 1, 1991.
Decided Oct. 29, 1991.

---

Mercer Anderson, Washington, D.C.,* appointed by this court, was on the brief for appellant.

John Payton, Acting Corp. Counsel, with whom Charles Reischel, Deputy Corp. Counsel and Mary L. Wilson, Asst. Corp. Counsel, Washington, D.C., were on the brief for appellee.

Before ROGERS, Chief Judge, and WAGNER, Associate Judge, and PRYOR, Senior Judge.

ROGERS, Chief Judge:

Appellant Thomas D. Vaughn appeals from a judgment of the trial court sustaining a determination by the District of Columbia Department of Corrections (the "Department") that he will derive no further benefit under the D.C. Youth Rehabilitation Amendment Act of 1985. Appellant contends that the trial judge erroneously refused to let him demonstrate that the Department had violated its own rules and regulations during appellant's disciplinary hearings which formed the basis for the Director's no-benefit determination. We reverse and remand to the trial court to make findings on whether the procedural violations occurred in the separate disciplinary proceedings under 28 DCMR § 500.1 *et seq.*, and if so, to determine whether a remand to the Department is required because the violation would prevent the Department from relying on the disciplinary report as a basis for a "no-further-benefit" determination.

I.

After being convicted of two drug-related offenses, appellant was sentenced under the District of Columbia Youth Rehabilitation Amendment Act of 1985 (YRA), D.C.Code § 24–803(b) (1989), and confined at Youth Center I in Lorton, Virginia.[1] While there, he was the subject of a number of disciplinary reports for a variety of infractions, including assaults on a corrections officer and an inmate, and he spent six months in the maximum security unit as a result of his disruptive behavior.

As a result, on October 5, 1989, the Acting Director of the D.C. Department of Corrections determined that appellant would receive no further benefit from continued treatment under the YRA, and proposed, pursuant to D.C.Code § 24–805(a), that he be transferred to an adult facility. The Acting Director's determination was based upon appellant's aggressive and disruptive behavior while in confinement, as described in the disciplinary reports, his unwillingness to address his drug problem by participating in and completing various programs, including rehabilitation and therapy and vocations programs, and the unlikelihood of his being placed in less secure confinement than the Maximum Security Unit. Appellant appealed to the sentencing judge, claiming that at his disciplinary hearings he had been denied his Sixth Amendment right to counsel, his right to notice, his right to an impartial hearing, findings based on substantial evidence, and written findings on specific acts constituting misconduct.[2]

---

* Upon Mr. Anderson's death, Mindy Daniels, was appointed as counsel for appellant on March 15, 1991. She did not file a further brief.

1. Appellant was convicted of attempted distribution of phencyclidine (PCP), D.C.Code § 33–516 (1988) and attempted possession of cocaine with intent to distribute. *Id.* On November 22, 1988, Judge Eilperin sentenced him to two years under the YRA for the first attempted distribution, and on January 5, 1989, Judge Hess sentenced him to an 18 month consecutive YRA sentence for the second attempted possession.

2. Initially, because appellant claimed that he had not been notified of his right to appeal to the Superior Court, he sought to vacate the October 5, 1989 notice, or alternatively, to have

his appeal, filed January 17, 1990, effective *nunc pro tunc* so that appellant's appeal would be timely. The October 5, 1989 report failed to state that appellant had to appeal within 30 days of receipt of the Acting Director's statement, which appellant received on October 13, 1989. The government's opposition contained a copy of a form notifying appellant that he had 30 days to appeal, as of October 10, 1989. The trial judge ruled that appellant's appeals would be treated as timely filed.

Appellant's contention on appeal to this court that the trial judge erred in denying his motion to vacate the notice of October 5, 1989 as invalid on its face since it did not comply with the 30–day appeal notice requirements of D.C.Code § 24–805(a)(1), is of no moment in view of the

The trial judge held a hearing, at which the parties were allowed to present evidence, and appellant testified. The judge restricted appellant's counsel from exploring the factual basis underlying the disciplinary reports. The judge indicated that he thought that he was only required to allow appellant to allocute, viewing the proceedings to be in the nature of a determination whether there should be a resentencing, but he observed that he had afforded appellant additional procedural rights in the interest of fairness. The judge declined to "go behind" the findings in the disciplinary reports or to examine whether sufficient evidence supported the finding of a violation in each case, viewing his role as limited to being "assured that something is not being taken from [appellant] arbitrarily."

The Corrections Department, through Ms. Renee Story, appellant's Youth Center case manager, testified generally about the Department's disciplinary procedures,[3] and, as custodian of the records, produced seven disciplinary reports on appellant.[4] Ms. Story also testified that the "no-further-benefit" determination was based on appellant's "assaultive behavior towards staff and other residents" as evidenced by the disciplinary and "incidental" reports and the behavior she had observed in the maximum security unit. On cross-examination she stated that a lot of prisoners have copies of the Lorton regulation booklet, containing the procedures for disciplinary hearings,

although she did not know if appellant had received a copy.

Appellant testified that no Corrections Department officer ever appeared or testified against him at his disciplinary hearings, and he corroborated Ms. Story's testimony that when he made no comment on the alleged charges he was automatically found guilty. He claimed that he had asked for his lawyer but his lawyer was only involved in the two most recent disciplinary proceedings. He denied receiving the disciplinary procedures handbook referred to in the investigative reports. Regarding his appeals of charges in two disciplinary reports, he claimed that at one hearing he had presented five or six witnesses who denied he had assaulted a Corrections Department officer, and that the bodily injury charge (but not the assault charge itself) was dropped. His other appeal, after a rehearing, was unsuccessful.[5]

The trial judge concluded, on the basis of the seven disciplinary reports, that the Acting Director's determination of "no-further-benefit" should be sustained. Appellant had been given a hearing on all seven disciplinary reports, and the judge concluded that it was unnecessary to go behind the findings by the Corrections Department. The judge elaborated:

> I wanted to be sure that it wasn't a case where somebody was upset with Mr. Vaughn and decided to get him out of the youth center, but when I look at these exhibits I see where reports are

judge's ruling that appellant's appeals under § 24–805 were timely.

3. She explained that an inmate may appeal to a hearing officer or Adjustment Board (consisting of three correctional officers). She testified that inmates often call correctional officers but the officers are often unavailable because they are working another shift. She also testified that an inmate who refuses to make a statement at the administrative hearing is found guilty, the disciplinary report being treated as evidence once it is investigated. The supervisor who prepares the investigative report makes certain the inmate gets a copy.

4. The judge overruled appellant counsel's objection to the admission of six of the disciplinary reports, (on the grounds that the preparer of the document was not present for cross-examina-

tion), noting that the records were kept in the regular course of business. Appellant's counsel advised the judge that he had requested access to appellant's administrative reports and the government had not provided them until the morning of the hearing. The judge denied counsel's request for a continuance. On appeal appellant claims that he was prejudiced by the government's failure to turn over to his counsel the exhibits requested until the day of the hearing. We need not address this claim in view of the disposition of the appeal.

5. Appellant's counsel also sought, unsuccessfully, to introduce into evidence two appeal briefs, and represented that appellant obtained a reversal in one (a case on which the government does not rely in seeking a determination of no further benefit) and a dismissal of one of the charges in one case.

made by various correctional officers—it is not by just one officer—and I do not think that due process requires me to conduct any type of a de novo hearing to determine whether he did or did not commit these infractions, nor do I deem due process requires me to be listening to any tapes of those proceedings to determine whether or not the findings are supported by the evidence presented at those hearings.

What is sufficient perhaps is allocution alone, which has been accorded Mr. Vaughn. What we have done here is a little more. We have gotten the disciplinary reports in and the findings by the body which acted upon the hearing which was requested by Mr. Vaughn, and at least in seven instances there have been disciplinary reports which have been sustained involving some pretty serious disciplinary conduct on the part of the [appellant], and the type of conduct set forth in these reports would indicate that he is not the type of individual who should be at a youth center.... 

The judge ordered appellant to serve the remainder of his sentence for attempted possession with intent to distribute cocaine at an adult facility.

## II.

The District of Columbia Youth Rehabilitation Amendment Act of 1985 (YRA), D.C.Code §§ 24–801 to –807 (1989), was enacted by the Council of the District of Columbia in 1985 to fill the void left when Congress repealed the Federal Youth Corrections Act. REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, ON BILL 6–47, "THE YOUTH REHABILITATION ACT OF 1985," (REPORT) at 2 (June 19, 1985); see also Brown v. United States, 579 A.2d 1158, 1158–59 (D.C.1990). For the most part, the YRA is modelled on and similar to its federal predecessor. REPORT at 3; see also, Brown, supra, 579 A.2d at 1159 & n. 2; Ralston v. Robinson, 454 U.S. 201, 207, 102 S.Ct. 233, 238, 70 L.Ed.2d 345 (1981) (describing goals of former federal act in similar terms). Unlike the Federal Youth Corrections Act, however, the YRA authorizes the Director of the D.C. Department of Corrections to make "no-further-benefit" determinations and to "summarily revoke[ ]" youth offender status, after affording the youth certain procedural protections. D.C.Code § 24–805.[6]

Appellant contends that the trial judge, in sustaining the "no-further-benefit" determination by the Department, erred in denying appellant the opportunity to show that the Department had violated its rules and regulations during the disciplinary hearings. Specifically, he maintains that he was improperly denied the rights to counsel and to confront and call witnesses at his disciplinary hearings, that the disciplinary decisions were based on matters not in evidence, that the disciplinary and investigative reports were not supported by reliable, probative and substantial evidence, and that members of the disciplinary board improperly examined his administrative jacket during a hearing. He also contends that he was never given a copy of a booklet describing the procedures used in a disciplinary hearing, as required by 28 DCMR § 507.11. Thus, he contends that his disci-

---

**6.** D.C.Code § 24–805 (1989) provides:

(a) If the Director of the Department of Corrections ("Director") determines that a youth offender will derive no further benefit from the treatment pursuant to this chapter, the Director shall notify the youth offender of this determination in a written statement that includes the following:

(1) Notice that the youth offender may appeal the Director's determination to the sentencing judge in writing within 30 days of the youth offender's receipt of the Director's statement required by this section;

(2) Specific reasons for the Director's no further benefit determination; and

(3) Notice that an appeal by the youth offender to the sentencing judge will stay any action by the Director regarding a change in the youth offender's status until the sentencing judge makes a determination on the appeal.

(b) The decision of the sentencing judge on the appeal of the youth offender shall be considered a final disposition of the appeal and shall preclude further action by the Director to change the status of a youth offender for a 6-month period from the date of the sentencing judge's decision.

plinary hearings were procedurally defective, and that he was entitled to raise these defects at the hearing before the trial judge on his appeal from the Director's "no-further-benefit" determination. He further contends that because the Department violated its regulations and due process, the "no-further-benefit" determination should have been vacated and the matter remanded to the Department.

### A.

In *(Raymond) Coates v. United States*, 482 A.2d 1239 (D.C.1984), the court faced an analogous situation in which the sentencing judge had entered a "no-further-benefit" finding, thereby permitting the defendant's transfer from a youth to an adult facility. The court held, adopting the opinion of the United States Court of Appeals for the District of Columbia Circuit in *In re (Allen) Coates*, 229 U.S.App.D.C. 67, 69, 711 F.2d 345, 347 (1983) (per curiam), that the defendant had a liberty interest that was entitled to due process protections and, further, that upon balancing the interests involved the defendant was entitled, "at a minimum," to a hearing. *(Raymond) Coates, supra*, 482 A.2d at 1241–42. The court left to the trial court "to fashion any procedures, concomitant to a hearing, as may be required to comport with [the defendant's] right to due process."[7] *Id.* at 1243 (citation omitted). The court viewed the appeal as involving a modification of the terms and conditions of confinement rather than a resentencing. *Id.* at 1242; *see In re (Allen) Coates, supra*, 229

U.S.App.D.C. at 69, 711 F.2d at 347 ("the [sentencing] court is thus exercising the same authority with respect to youth offenders that the [Federal] Bureau [of Prisons] traditionally exercises with respect to adult offenders," and the modification "might trigger [the defendant's] right to prior allocution").

Our decision in *(Raymond) Coates* made clear, however, that the proceedings before the trial court under D.C.Code § 24–805 may require the court to do more than take the disciplinary reports at face value. In *(Raymond) Coates*, the contentions were that the defendant had been denied access to relevant information regarding his disciplinary record which the government had provided to the trial court, and that the disciplinary actions taken by the Corrections Department had failed to account for the special needs of a youth offender. 482 A.2d at 1243–44. Upon remand, the trial court was to address these contentions regarding the adequacy of notice and treatment at some kind of hearing. *Id.* at 1243.[8]

■ We conclude that a trial judge is required in a "no-further-benefit" appeal under § 24–805 to allow a youth offender the opportunity to prove that his due process rights were violated during the disciplinary proceedings where the disciplinary report forms the basis for the "no-further-benefit" determination. This conclusion follows from decisions of the Supreme Court on good time credits.[9] In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court concluded that a prisoner must be accorded minimum

7. In concluding that a hearing was required the court cited *Walls v. Kerr*, 568 F.Supp. 684, 687 (W.D.Wis.1983) (defendant entitled under due process to opportunity to respond to allegations of prison officials, "if not a full-blown evidentiary hearing on the charges," before the trial judge reaches a determination; error for judge to rely on *ex parte* information from prison officials), and *United States v. Won Cho*, 730 F.2d 1260, 1270–71 (9th Cir.1984) (concluding that "a [federal youth correction act] sentence may be converted into an adult sentence only when a district court has convicted the youth offender of an additional criminal offense").

8. Under the Federal Youth Corrections Act, the courts had held that the prisoner was, at a

minimum, entitled to allocute at his "no benefits" hearing. *E.g., In re (Allen) Coates, supra*, 229 U.S.App.D.C. at 69, 711 F.2d at 347. Still other courts had held that the inmate was entitled to a "full evidentiary hearing," with counsel. *United States v. Jackson*, 681 F.Supp. 295, 302 n. 15 (D.Md.1988). *Watts v. DuBois*, 660 F.Supp. 1246, 1249 (D.Colo.1987) (prisoner must be given right at hearing to challenge "both legally and factually" grounds for "no-further-benefit" finding, and must be afforded counsel).

9. Under the Corrections Department regulations, one of the penalties that can be imposed for a disciplinary infraction is the "[f]orfeiture of all or part of earned good time...." 28 DCMR § 505.2(a).

procedural requirements at disciplinary hearings, including the right to advance written notice of the violation and a written statement of the reasons for disciplinary action, and the right to call witnesses and present documentary evidence when not unduly hazardous to institutional safety or correctional goals. 418 U.S. at 564–66, 94 S.Ct. at 2978–80. The Court left to the "sound discretion of officials of state prisons" the decision whether to accord the right of cross-examination and confrontation and the right to counsel. *Id.* at 569–70, 94 S.Ct. at 2981–82. The prisoner was, in the Court's opinion, also entitled to "a 'written statement by the factfinders as to the evidence relied upon and the reasons' for the disciplinary action." (quoting *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)).

A decade later, in *Superintendent, Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985), the Supreme Court held that "revocation of good time does not comport with the minimum requirements of procedural due process ... unless the findings of the prison disciplinary board are supported by some evidence in the record" (citations and internal quotation marks deleted). In "[r]equiring a modicum of evidence to support a decision to revoke good time credits," the Court's focus was on preventing "arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." 472 U.S. at 455, 105 S.Ct. at 2774. The Court reasoned that, since *Wolff* already required prison officials to provide an explanation for any disciplinary action, the requirement that the action be supported by evidence in the record would not impose "significant new burdens" on prison administrators. *Id.* The Court made clear, however, that the inquiry did not "imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second guessing on review." *Id.* The inquiry

> does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant

question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Id.* at 455–56, 105 S.Ct. at 2774.

Accordingly, it necessarily follows that because a protected liberty interest is at stake, the trial judge must examine the alleged procedural deficiencies in the disciplinary proceedings which formed the basis for the Department's "no-further-benefit" determination. While the requirements of the due process clause are flexible, *Morrissey v. Brewer, supra,* 408 U.S. at 481, 92 S.Ct. at 2600, and appropriate weight must be given to the realities of the institutional setting, *Wolff, supra,* 418 U.S. at 556, 94 S.Ct. at 2974, the significant consequences for the prisoner who loses his youth offender status requires that on appeal to the sentencing judge he be permitted to raise the procedural deficiencies, if any, of the disciplinary proceedings which form the basis for the "no-further-benefit" determination.

## B.

■ The government maintains, however, that appellant is precluded from raising before the sentencing judge any procedural irregularities of the disciplinary hearings underlying the "no-further-benefit" determination because he could have raised the issue by filing a petition for a writ of habeas corpus, D.C.Code § 16–1901 (Repl. 1989), or by pursuing administrative appeals within the Department. As to the extraordinary writ of habeas corpus, although it was available to appellant to challenge the disposition of any of his disciplinary hearings, this court has not viewed it as the exclusive means by which he may present his view of the constitutional and regulatory deficiencies in the disciplinary proceedings. *See (Raymond) Coates, supra,* 482 A.2d at 1242 (citing *Walls v. Kerr, supra* note 7, 568 F.Supp. 684 (habeas corpus by youth offender in connection with recommended transfer based on "no-further-benefit" finding by prison officials)) & 1243 n. 4; *In re (Allen) Coates, supra,* 229 U.S.App.D.C. at 69, 711 F.2d at 346 (petition on writ of mandamus and writ of pro-

hibition). We hold that, at least where the government seeks to rely upon decisions in the disciplinary process as a basis for its "no-further-benefit" determination, the youth offender may raise in a hearing before the sentencing judge under D.C.Code § 24–805, any due process challenges to the validity of the disciplinary decisions.

Under the Department's regulations, appellant had the right to appeal the decision of a disciplinary hearing officer or Administrative Board to the Administrator. 28 DCMR § 513.9.[10] With respect to the two most recent disciplinary hearings relied on by the Department, appellant did appeal internally. As to the other five disciplinary reports, neither the record nor the trial judge's findings makes clear whether appellant's failures to ask for a hearing or to appeal from the initial hearing should be considered preclusive. The trial judge did not make a finding that appellant was on notice of his right to appeal the results of the initial disciplinary review or the initial hearing. The disciplinary reports themselves do not explicitly mention the right to appeal. The underlying investigatory reports contain an indirect reference to the procedural rights described in the disciplinary procedures booklet. Appellant testified that he had not received a copy of the booklet explaining his right to appeal a disciplinary sanction, and the government's evidence about general procedures did not address his denial. Were the trial judge to find that appellant had not been given the notice of his right to appeal to which he was entitled under the Department's regulations, then his failure to appeal the disciplinary results could hardly be given preclusive effect. Cf. Head v. United States, 489 A.2d 450, 451 (D.C.1985) (allowing a defendant to assert on collateral attack an issue not raised on direct appeal upon a showing of "both cause for [the] failure ... and prejudice as a result of [the] failure").

On the other hand, it is not entirely clear that strict rules of issue preclusion are invariably applicable in the prison disciplinary context. See generally Ali Baba Co., Inc. v. Wilco, Inc., 482 A.2d 418, 423 (D.C.1984) (discussing factors for determining whether it is fair to apply doctrine of collateral estoppel, adopting analysis in Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329–31, 99 S.Ct. 645, 650–52, 58 L.Ed.2d 552 (1979)). Aside from the writ of habeas corpus, the appeal to the sentencing judge of a "no-further-benefit" determination is the first opportunity for a youth offender to raise due process complaints about a disciplinary hearing before the sentencing judge. This procedure is unlike that under the D.C. Administrative Procedure Act, which controlled in the cases relied on by the government.[11] However, it also is clear that it would be completely disruptive of the Department's disciplinary system were a prisoner able to ignore the opportunities that are afforded within the Departmental disciplinary system to vindicate his rights under Department regulations. As the Supreme Court made clear in Hill, supra, 472 U.S. at 455, 105 S.Ct. at 2774, in addressing good time credits, the sentencing judge's primary role is to assure that the Department's determination is not arbitrary or without some evidence to support the disciplinary findings, not to create a situation that would "threaten[ ] institutional interests or impos[e] undue administrative burdens." The judge's role is no different in considering an appeal from a "no-further-benefit" determination; neither are the interests that are to be balanced. Therefore, upon balancing the defendant's and the institutional interests, we conclude that, in the absence of any claim much less showing that the administrative

---

**10.** If the disciplinary sanction imposed on a prisoner includes a forfeiture of earned good time, the Director of the Department of Corrections must review the decision. 28 DCMR § 516.

**11.** See Rhema Christian Center v. Board of Zoning Adjustment, 515 A.2d 189, 192–93 (D.C.1986) (giving preclusive effect to a finding by the Board of Zoning Adjustment); Foster v. District of Columbia, 497 A.2d 100, 103 (D.C.1985) (a driver who fails to appeal the revocation of his license may not challenge the validity of the revocation at a subsequent trial for the crime of operating a motor vehicle without a valid license).

remedy is unavailable or inadequate, *see Preiser v. Rodriguez*, 411 U.S. 475, 493, 93 S.Ct. 1827, 1838, 36 L.Ed.2d 439 (1973), that a youth offender, who is given notice of his procedural rights within the Department, will be precluded from complaining about the denial of those rights on appeal under § 24–805(a)(3) of a "no-further-benefit" determination unless he has first exhausted the Departmental appeals.[12]

### C.

The government maintains finally that appellant's allegations of procedural defects in the disciplinary process are clearly meritless. We cannot agree.

■ The Corrections Department has promulgated regulations for disciplinary proceedings, 28 DCMR. §§ 500–516 (1987), which afford a prisoner certain procedural rights, including the right to a hearing before a hearing officer or an Adjustment Board, 28 DCMR § 508.2 (1987), the right to call at least two witnesses unless reasons are given explaining why this would be disruptive, *id.* at § 510.1 & 510.2, the right to be represented by counsel, *id.* at §§ 507.14 to 507.16, the right to either speak on his own behalf or to remain silent, *id.* at § 511.3, and the right to a written statement of findings and notice of his right to appeal. *Id.* at § 512.7. The Department is bound by its own validly promulgated regulations. *Dankman v. District of Columbia Bd. of Elections*, 443 A.2d 507, 513 (D.C.1981) (en banc) (and cases cited).

At the hearing on appeal from the "no-further-benefit" determination, appellant presented a colorable claim that he was deprived of due process as provided by the regulations. In connection with one of the disciplinary hearings, the investigatory report shows that appellant requested counsel, and counsel was not provided. This

may have violated the Department's regulations. *See* 28 DCMR §§ 507.13 to 507.16 (requiring the Department to give a prisoner a "reasonable opportunity to contact any legal service organization" to obtain representation).[13]

Another report indicates that appellant requested the preparer of the disciplinary report to be present at the hearing and a handwritten notation indicates that the preparer was "not necessary." This explanation would appear to be insufficient under the regulations, and raises the question of the sufficiency of compliance with the regulations. *See* 28 DCMR § 510.2 (the prisoner has a right to call a witness unless "the Board determines that [the witness] cannot provide relevant testimony, would be unduly repetitious of previous testimony, or should not be called for any other good cause related to the safety of any resident or other person" and requiring the Board to "note in the record the *specific reason* for limiting the number of witnesses") (emphasis added).

In still another investigatory report, appellant indicated that he wanted to call two witnesses, one of whom indicated he was willing to appear at the hearing. Various handwritten notations, some illegible, purport to explain what happened to appellant's requests. The notations, if taken at face value, would appear to indicate that appellant's rights under the Department's regulations were denied.[14] *See id.* Furthermore, the investigatory reports refer to procedural safeguards set forth in a booklet entitled "Administrative Procedures for Adjustment and Housing Actions and Code of Offenses," which appellant testified he never received and the government's evidence was not to the contrary.[15] *Cf. Smith v. United States*, 583 A.2d 975, 983 (D.C.1990) (court official's statement regarding normal procedures is prima facie evidence subject to rebuttal).

12. We have no occasion to reach the question whether preclusion would apply in a habeas corpus proceeding.

13. Appellant was not allowed to explain at the hearing before the sentencing judge the circumstances of this denial of his request for representation.

14. The sentencing judge made no findings on appellant's claims of procedural violations.

15. The sentencing judge did not address the apparent conflict in testimony between appellant's direct assertion and the case worker's testimony about what generally happened.

Accordingly, we hold that on appeal under D.C.Code § 24–805, the sentencing judge must conduct a hearing at which a defendant is allowed to allocute and to present evidence regarding the alleged violation of his due process rights protected by Department regulations at the disciplinary proceedings which constitute the basis for the Department's "no-further-benefit" determination.[16] The judge must make findings on whether the violations occurred, and if they did, determine whether the untainted evidence—the evidence other than the disciplinary reports in which the procedural violations occurred—is sufficient to sustain the Director's "no-further-benefit" determination. A defendant will be precluded from presenting evidence of procedural violations in a § 24–805 appeal if he had timely notice of his right to appeal and failed to exhaust his Departmental remedies.

We, therefore, reverse and remand the case to the trial court to determine (1) whether appellant was deprived of due process rights under Department regulations at his disciplinary hearings,[17] and (2) whether the "no-further-benefit" determination rested on findings resulting from disciplinary hearings at which such violations occurred. If the court concludes that the "no-further-benefit" determination can be sustained on the basis of untainted evidence, then the amended judgment directing that appellant be confined in an adult facility for the remainder of his sentence of eighteen months for attempted possession with intent to distribute cocaine shall be reinstated, upon new findings by the court for sustaining the Acting Director's determination.

*Reversed and remanded.*

---

16. Appellant had counsel on his appeal to the sentencing judge, and therefore, we need not decide whether counsel is required at the § 24–805 hearing. *Cf. Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (defendant has the right to counsel at sentencing).

17. The judge must also determine, with respect to each disciplinary hearing, whether appellant has waived the right to challenge any of the alleged procedural defects by failing to appeal the result. This includes a determination whether appellant had timely notice of his procedural rights to appeal the disciplinary findings.